IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **CAROL BURGOS BERRÍOS**, <br><br>    Plaintiff, <br><br> v. <br><br> **RENT EXPRESS BY BERRÍOS, INC.**, *et al.*, <br><br>    Defendants. | Civil No. 11-1999 (JAG/BJM) |

## REPORT AND RECOMMENDATION

Carol Burgos Berríos sued Rent Express By Berríos, Inc. and an unnamed insurer in Puerto Rico court, alleging violations of various federal and local employment laws. (Docket No. 10-1, or "Compl."). Rent Express removed the case under 28 U.S.C. § 1441(a) and federal question jurisdiction. (Docket No. 1). Burgos voluntarily dismissed several of her claims with prejudice, but still seeks relief under (1) the "COBRA" amendments to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1161 *et seq.*; (2) Law No. 115 of December 30, 1991, 29 L.P.R.A. §§ 194 *et seq.*; and (3) Article 1802 of the Puerto Rico Civil Code, 31 L.P.R.A. § 5141. (Docket No. 18).

Before the court is Rent Express's motion for summary judgment. (Docket No. 27). Burgos opposed (Docket No. 38, or "Pl. Mem.") and Rent Express replied (Docket No. 55, or "Reply Mem."). The matter was referred to me for a report and recommendation. (Docket Nos. 51, 52). For the reasons that follow, I recommend that the motion be **granted in part.**

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material only if it "might affect the outcome of the suit under the governing law," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986), and "[a] 'genuine'

issue is one that could be resolved in favor of either party." Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 19 (1st Cir. 2004). The court does not weigh the facts, but instead ascertains whether the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." Leary v. Dalton, 58 F.3d 748, 751 (1st Cir. 1995).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [evidence] . . . which it believes demonstrate the absence of a genuine issue of material fact." Crawford-El v. Britton, 523 U.S. 574, 600 n.22 (1998) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)); Fed. R. Civ. P. 56(c)(1). Once this threshold is met, the burden shifts to the nonmoving party, who "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Thus, summary judgment is appropriate where the nonmoving party rests entirely upon "conclusory allegations, improbable inferences, and unsupported speculation" on any essential element of the claim. Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990). However, the court draws inferences and evaluates facts "in the light most favorable to the nonmoving party," Leary, 58 F.3d at 751, and may not "superimpose [its] own ideas of probability and likelihood (no matter how reasonable those ideas may be) upon the facts of the record." Greenburg v. P.R. Maritime Shipping Auth., 835 F.2d 932, 936 (1st Cir. 1987).

**FACTUAL AND PROCEDURAL BACKGROUND**

The facts of the case are summarized here after applying Local Rule 56, which structures the presentation of proof at summary judgment.[1]

---

[1] The rule "relieve[s] the district court of any responsibility to ferret through the record to discern whether any material fact is genuinely in dispute," CMI Capital Market Inv. v. González-Toro, 520 F.3d 58, 62 (1st Cir. 2008), and prevents parties from "shift[ing] the burden of organizing the evidence presented in a given case to the district court." Mariani-Colón v. Dep't of Homeland Sec., 511 F.3d 216, 219 (1st Cir. 2007). The penalty for noncompliance is severe: "If the party opposing summary judgment fails to comply with Local Rule 56(c), the rule

Rent Express rents furniture, appliances, and electronics through various stores in Puerto Rico. (Docket No. 54, or "Def. St.," ¶ 1). Burgos began a probationary employment contract with Rent Express on March 30, 2010; her position was "Internal Collections and Telemarketing Promoter." (Def. St., ¶ 2). The position required her to (1) make phone calls and send letters to clients with overdue accounts; (2) "offer guidance" to these clients "regarding payment processing"; (3) update the client database; (4) log her collection efforts; (5) prepare reports on her work; (6) make marketing phone calls; and (7) regularly and punctually attend work. (Def. St., ¶ 6). She acknowledged receiving various company policies on March 26, 2010, including documents explaining rights under COBRA. (Def. St., ¶¶ 7-8). She was paid $7.50 an hour, and became a regular employee in the same position on June 27, 2010. (Def. St., ¶¶ 3, 5). Her starting schedule was Tuesday through Saturday from 9:00 a.m. until 6:00 p.m. (Def. St., ¶ 4). Burgos believes her coworkers resented her for having a schedule which gave her two days off in a row, while they only got one day off despite having seven to eight months of seniority. (Id.).

Being a regular employee made her eligible for medical insurance, and she enrolled in the "Rent Express MCS Group Health Plan" ("Employer Group Plan" for short) on June 29, 2010, effective July 1. (Def. St., ¶ 9). Rent Express pays for its employees' individual coverage, while they remain responsible for the balance of any premium. (Def. St., ¶ 10). Medical costs were covered under the plan, subject to a deductible. (Id.). Burgos elected both medical and dental coverage for herself and one dependent, and her biweekly contribution was $65.79. (Id.).

---

permits the district court to treat the moving party's statement of facts as uncontested." Id. Thus, litigants ignore the rule "at their peril." Id.
 A motion for summary judgment must be supported by "a separate, short, and concise statement of material facts, set forth in numbered paragraphs, as to which the moving party contends there is no genuine issue of material fact to be tried." Local Rule 56(b). The opposing party must admit, deny, or qualify the moving party's facts by reference to each numbered paragraph, and may make a separately numbered statement of material facts. Local Rule 56(c). The moving party may reply and admit, deny, or qualify the opponent's newly-stated facts, again in a separate statement and by reference to each numbered paragraph. Local Rule 56(d). Any facts supported by citation to record evidence and not properly controverted as described by the rule are deemed admitted. Local Rule 56(e).

Burgos requested medical leave for acute laryngitis in December 2010, and submitted a certificate from Dr. Jose A. Pietri stating she would not be able to return to work until January 10, 2011. (Def. St., ¶ 11). Rent Express granted her leave through January 10, 2011. (Def. St., ¶ 12). Burgos had accrued only 18.75 hours of sick leave, which did not cover her expected absence. (Def. St., ¶ 13). She sought temporary disability benefits under Puerto Rico's "SINOT" system soon after her leave began. (Id.). SINOT denied her application on January 12, 2011. (Def. St., ¶ 15).

Burgos did not return to work on January 10, 2011 because she was still sick. (Def. St., ¶ 14). By the end of January, Burgos had not worked since December 6, 2010. (Def. St., ¶ 16). Dr. Pietri prepared another certificate stating she would not be able to work between January 11 and February 13, 2011. (Docket No. 54, p. 14-18, or "Pl. St.," ¶ 1).[2] Burgos brought the second certificate to Rent Express.[3] (Pl. St., ¶ 1). Burgos also told Rent Express she was appealing her SINOT denial. (Pl. St., ¶ 2).

On January 27, 2011, Omavra Sánchez prepared a letter on behalf of Rent Express notifying Burgos of her right to continue coverage under COBRA. (Def. St., ¶ 17). Sánchez asserts she prepared the letter because Burgos was on SINOT leave, had not worked since December 6, and because "her work hours had been reduced to zero." (Def. St., ¶ 17; Docket No. 27-16, ¶ 6).[4] The letter indicates that her COBRA-qualifying event was "termination," and

---

[2] Docket No. 54 is Burgos's second revision of her Local Rule 56 statement. Because Burgos apparently intends it to be a complete replacement for her prior statements, and since Rent Express's reply (Docket No. 55-1) is addressed to it, it is the only version I have considered here. Rent Express's motions to strike the prior two statements (Docket Nos. 44, 49) are therefore **moot.**

[3] Burgos's statement under penalty of perjury asserts this visit happened January 13, 2011. (Docket No. 40, ¶ 3). Rent Express objects that she testified at her deposition that she brought the certificate on January 11. (See Docket No. 48-1, p. 36). When a deponent's affidavit contradicts clear answers to unambiguous questions and does not explain the change in testimony, the affidavit's contradictory portions may be disregarded. Colantuoni v. Alfred Calcagni & Sons, Inc., 44 F.3d 1, 4–5 (1st Cir. 1994). But since any conflict between these two dates is immaterial to resolving the motion for summary judgment, it is unnecessary to plumb the depths of this dispute any further.

[4] Burgos denies Sánchez's declaration under penalty of perjury as "self-serving." (Docket No. 54, ¶¶ 17-18). That fact alone is no reason to exclude it from the summary judgment record. "A party's own affidavit,

that her plan coverage ended December 31, 2010. (Docket No. 48-10). Notwithstanding this, Burgos was covered under the Employer Group Plan through January 31, 2011; indeed, the costs of a doctor's visit in January were covered by it. (Def. St., ¶ 19).

Sánchez says the "termination" reason and plan ending date were incorrectly marked because of a clerical mistake she made. (Def. St., ¶ 18). Burgos read the letter and thought she had been terminated. (Def. St., ¶ 20; Pl. St., ¶¶ 3, 5). Burgos also believed she did not have health coverage. (Pl. St., ¶ 7). Burgos speculates that the letter was not a "slip up," but rather that it was "something premeditated." (Pl. St., ¶ 6). On February 14, 2011, Burgos went to tell Sánchez she was still sick, told her details about her attempts to seek treatment, and asked Sánchez "why the employment termination?" (Def. St., ¶ 21; Docket No. 48-1, p. 43). According to Burgos, Sánchez replied that it was a mistake, and that "I will fix it for you. Sick leave. You have a job, but you do not have a health plan." (Def. St., ¶ 22; Pl. St., ¶ 8). Sánchez provided a new letter with "employment leave" marked as the qualifying event, and coverage through January 31, 2011. (Def. St., ¶ 23). Burgos was also given a COBRA enrollment form, which Sánchez and Martínez helped her fill out; she filed the form with MCS and paid her plan contribution of $274.05 the same day. (Def. St., ¶ 24). MCS gave her COBRA coverage retroactive to February 1, 2011, and she only paid a deductible for a specialist visit later that day. (Def. St., ¶ 25). Burgos did not understand the reason why she could not be covered by the Employer Group Plan instead, however. (Pl. St., ¶ 9). In any event, Burgos concludes this

---

containing relevant information of which [s]he has first-hand knowledge, may be self-serving, but it is nonetheless competent to support or defeat summary judgment." Cadle Co. v. Hayes, 116 F.3d 957, 961 n.5 (1st Cir. 1997).

Burgos also complains that the statement of Grisell Martínez is "in doubt since she has denied the existence of" a second medical certificate. (Docket No. 54, ¶ 18). From this opaque pronouncement, I discern Burgos's complaint to be that the Martínez statement does not mention two certificates in its list of documents, even though Burgos contends that she gave Rent Express two certificates. But since Rent Express offers the affidavit only to authenticate its own documentary evidence, it is wholly unclear what "doubt" is raised by that omission. (See Docket No. 27-25). In any case, being "in doubt" is not grounds to omit evidence from the summary judgment record.

episode was the cause of the mental condition that has entitled her to Social Security disability benefits for life. (Pl. St., ¶ 10).

Sometime between February 20 and 23, Burgos called Sánchez because she was worried she could not afford the COBRA payment for March; Sánchez transferred her to Nyurka García, another Human Resources employee. (Def. St., ¶ 26). García said she would look into the matter of her health coverage, but needed time. (Def. St., ¶ 27). By García's calculations, Burgos had sixty-four hours of "vacation time" and twelve hours of "sick leave," and by liquidating that time Burgos would have wage-earning status and thus be eligible for non-COBRA coverage under the Employer Group Plan. (Def. St., ¶ 27). García called Burgos back on March 10, 2011, and told her to come sign "some documents." Burgos came to the office and signed a document requesting the liquidation and pay of her vacation leave. (Def. St., ¶ 28). Burgos was then covered under the Employer Group Plan retroactively to March 1, 2011; her March contribution was paid from her Rent Express vacation leave. (Def. St., ¶ 29). García called while Burgos was at a psychiatric appointment, and the delay in knowing whether she would have Employer Group Plan coverage left Burgos unable to sleep and "emotionally ruined." (Pl. St., ¶ 11).

On April 11, 2011, Martínez sent a letter on behalf of Rent Express notifying Burgos that she was eligible for FMLA leave; she would be covered under the Employer Group Plan but would have to make contributions directly to the company. (Def. St., ¶ 30). Burgos did not pay her share for April 2011, but remained covered. (Def. St., ¶ 31). She paid May and June 2011 contributions and was covered by the Employer Group Plan for those months. (Def. St., ¶ 32). Her FMLA leave ended July 3, 2011, and Burgos both lost her right to Employer Group Plan coverage and stopped making payments towards it; nonetheless, Rent Express paid her entire premium for July, August, and September 2011. (Def. St., ¶ 33).

On September 15, 2011, Rent Express sent another COBRA letter; Burgos did not enroll in COBRA coverage because Rent Express nonetheless continued her coverage in the Employer Group Plan. (Def. St., ¶ 34). Burgos remained employed with Rent Express at the time she filed this case. (Def. St., ¶ 35). When asked in her deposition how she was "retaliated against," she speculated about various motives including that she was sick, that she took a prescription that caused her to take frequent bathroom breaks, and that her coworkers complained about her schedule and its two consecutive days off. (Def. St., ¶ 36; Pl. St., ¶ 12).

## DISCUSSION

Burgos claims that Rent Express (1) violated COBRA's qualifying-event notification requirement, (2) retaliated against her for an activity protected under Law 115, and (3) injured her and is liable for damages under Article 1802 of the Civil Code. Rent Express counters that Burgos has no cause of action under the employment laws, and that those laws preempt her tort claim. I address these three theories in turn.

**I.      Defective COBRA Notice**

Burgos argues that Rent Express committed two COBRA notice violations.[5] COBRA requires employers to offer "the option of electing continuation coverage under the same terms of the employer's health plan after the occurrence of a 'qualifying event' which would otherwise end employee's health insurance coverage." Torres-Negrón v. Ramallo Bros. Printing, Inc., 203 F. Supp. 2d 120, 123 (D.P.R. 2002) (citing 29 U.S.C. § 1161; Gaskell v. Harvard Co-Op Soc'y, 3

---

[5] As Rent Express correctly notes, the complaint is actually silent on the question of adequate COBRA notice. It mentions "the COBRA Act, 29 USCA § 1161, et seq." once, and does not list notice violations among the causes of action. (See Compl., preamble & ¶¶ 13-17). Ordinarily, "[a] plaintiff may not simply throw a statutory reference into a complaint hoping to later flesh out its claim with facts in support." Ruiz Rivera v. Pfizer Pharm., LLC, 521 F.3d 76, 88 (1st Cir. 2008). But here, Rent Express voluntarily stipulated that, in light of her initial scheduling memorandum, many of her claims would be dismissed and the remainder would "solely be anchored upon COBRA, PR Law 115, and Article 1802." (See Docket No. 17). That memorandum articulated the same theories, essentially verbatim, that Burgos relies on now. (See Docket No. 15, p. 8-9). Thus, dismissing her claims because of the complaint's inadequacy would not protect Rent Express from unfair surprise, and would defeat the broader judicial interest in resolving claims on the merits.

F.3d 495 (1st Cir. 1993)). A "qualifying event" includes a termination or reduction in hours which would "result in the loss of coverage of a qualified beneficiary," absent such continuation coverage. 29 U.S.C. § 1163. The statute imposes a duty to timely notify employees and beneficiaries of this right following an event. 29 U.S.C. § 1166(a)(4). The relevant period of time is measured in two increments: (1) thirty days for an "employer" to notify the plan "administrator" of the qualifying event, and (2) fourteen days thereafter for the administrator to notify the beneficiary. 29 U.S.C. §§ 1166(a)(2), (a)(4)(A), and (c). Courts have discretion to award statutory damages of up to $110 per day, along with other "proper" relief, against an administrator who fails to provide timely notice. 29 U.S.C. § 1132(c)(1) (imposing fine); 29 C.F.R. § 2575.502c-1 (setting amount). A participant or beneficiary has a private cause of action for this relief, as well as "to obtain other appropriate equitable relief (i) to redress such violations [of COBRA or the terms of the plan] or (ii) to enforce any provisions of this subchapter or the terms of the plan." 29 U.S.C. §§ 1132(a)(1)(A), (a)(3)(B).

Burgos separately attacks (1) the original January 27, 2011 notice and (2) the backdated February 14, 2011 notice. First, she asserts the original notice was untimely because it stated she was terminated on December 31, 2010, yet was not mailed within fourteen days.[6] (Pl. Mem., p. 18-19). However, it is uncontested that she actually had Employer Group Plan coverage through January 31, 2011. (Docket No. 27-1, or "Def. Mem.," p. 9; Reply Mem., p. 6). Notwithstanding the language in the January 27 letter, or Burgos's subjective belief that she lost coverage on December 31, 2010, no qualifying event occurred then. See also 29 U.S.C. § 1163 (qualifying event is one "which, but for . . . continuation coverage . . . *would result in the loss of coverage* of

---

[6] Rent Express asserts that it is entitled to an additional thirty days because it has a dual role as both employer and plan administrator; however, courts have disagreed as to whether this is a plausible interpretation of the statute. Compare Anderson v. Royal Crest Dairy, Inc., 281 F. Supp. 2d 1242 (D. Colo. 2003) (surveying authorities and concluding that a forty-four day rule should not apply) with Torres-Negrón, 203 F. Supp. 2d at 126 (assuming forty-four day period as rule). The relevant administrative regulations assume a forty-four day rule. See 29 C.F.R. § 2590.606-4(b)(2).

a qualified beneficiary.") (emphasis added). In the absence of a qualifying event on December 31, 2010, Rent Express had no COBRA duty to notify Burgos at that time, and thus cannot be held liable on the instant failure-to-notify theory.

> Burgos's second contention is difficult to construe, but is essentially counterfactual:
>
> [T]he second *election notice* dated January 27, 2011 and indicating that coverage would start on February 1, 2011 does not comply with COBRA since an employer cannot give such notice before the alleged date of the qualifying event, which Defendant tried to change[] to January 31, 2011 with a different reason (Labor License, instead of the true discharge)."

(Pl. Mem., p. 19) (italics as in original). From this, I gather that she contends the February 14 letter is ineffective because it was backdated to January 27, preceding the qualifying notice; since no post-January 31 notice was ever mailed, Rent Express allegedly breached its COBRA duty to notify her of the January 31, 2011 qualifying event. Yet the uncontested facts show that this letter was handed to Burgos in person *on February 14*. Rent Express's second letter therefore did not actually predate the alleged qualifying event. And since the February 14, 2011 letter was provided on the fourteenth day after January 31, Rent Express discharged its duty to notify her of the January 31, 2011 qualifying event.

The remainder of Burgos's COBRA discussion is unclear, but appears to focus on the grounds for awarding statutory damages, compensation, and attorney's fees for a violation. (See Pl. Mem., p. 19-20). Since she cannot establish deficient-notice liability, remedies are irrelevant. The court should grant summary judgment on the COBRA claims.

**II.    Law 115**

Burgos alleges that Rent Express retaliated against her for seeking SINOT coverage. (Compl., ¶¶ 14-15; Pl. Mem., p. 14). Puerto Rico's Law 115 prohibits discharge, threats, or discrimination against an employee who offers or attempts to offer testimony or information before a legislative, administrative, or judicial forum in Puerto Rico. 29 L.P.R.A. § 194a(a). To

prevail, an employee must establish a "prima facie case" showing (1) her participation in a protected activity and (2) "that he/she was subsequently discharged, threatened[,] or discriminated against regarding his/her employment." If that showing is made, the burden shifts to the employer to "claim and provide a nondiscriminatory legitimate reason for the discharge." Finally, the employee "should demonstrate that the alleged reason provided by the employer was a mere pretext for the discharge." 29 L.P.R.A. § 194a(c). Rent Express limits its attack to the two prongs of Burgos's prima facie case, which I consider in turn. (See Def. Mem., p. 12-13; Reply Mem., p. 8-9).

### A. Participation in a Protected Activity

Rent Express argues that Burgos's only evidence of "protected activity" comes from her testimony about reasons why her supervisors and colleagues might have disliked her, and that none of those reasons are protected. But the complaint alleged that she sought disability benefits under SINOT (Compl., ¶¶ 7-8), and there is undisputed evidence that she did so. (Def. St., ¶ 13). Burgos argues this is protected activity, by analogy to Puerto Rico Supreme Court precedent holding that State Insurance Fund benefit applications are Law 115-protected. (Pl. Mem., p. 14) (citing Irizarry v. Johnson & Johnson Consumer Prods. Co. (P.R.), 150 D.P.R. 155 (2000)).[7]

In Irizarry, an employee sued her employer under Law 115 claiming she had been fired in retaliation for telling her supervisor she was going to seek State Insurance Fund benefits for a work-related injury. 150 D.P.R. at 159-61. The defendant argued, and the trial court agreed, that Law 115 only protected testimony offered in the course of an investigation, and that applications

---

[7] No official translation of this Puerto Rico Supreme Court decision is available. As the party relying on it, Burgos is required to file a certified translation. Local Rule 5(g); Berríos-Romero v. Puerto Rico, 641 F.3d 24, 27 (1st Cir. 2011). However, this procedural oversight does not prevent the court from relying on the opinion as a basis for its decision. First, the court "may forgive a party's violation of a local rule." See Crowley v. L.L. Bean, Inc., 361 F.3d 22, 25 (1st Cir. 2004). Moreover, "[a] decision of a sister court is a proper matter of judicial notice. . . . We are taking judicial notice of law, not of fact." Berríos-Romero, 641 F.3d at 27 (allowing translation first filed on appeal) (internal citations and quotations omitted). Because the Supreme Court's discussion in Irizarry is necessary to this recommendation, Burgos is **ORDERED** to file a certified translation within fourteen days.

Case 3:11-cv-01999-JAG   Document 65   Filed 01/25/13   Page 11 of 16

Burgos Berríos v. Rent Express By Berríos, Inc.                                                                    Page 11
Civil No. 11-1999 (JAG/BJM) – Report and Recommendation

for benefits were beyond the legislative intent. While the point was not contested, the Supreme Court noted that the State Insurance Fund was an administrative agency under Puerto Rico's administrative procedure law. Id. at 165 (citing 3 L.P.R.A. § 2102).[8] Therefore, the Fund qualified as an administrative forum under Law 115. Id. In reviewing the text, statement of motives, and legislative history, the Supreme Court concluded that the legislature's intent was to protect employees from retaliation for expressions in *any* administrative proceeding, regardless of whether there was an investigation. Id. at 170. Accordingly, the plaintiff's application for benefits was a protected activity under Law 115. Id.

Here, Burgos correctly asserts that the same principle protects her application for SINOT benefits. The SINOT law charges the Secretary of Labor and Human Resources with the duty to make rules and administer the law's provisions. 11 L.P.R.A. § 206(a)(1). Therefore, like the State Insurance Fund, SINOT provides an administrative forum, and an application before it constitutes protected activity under Law 115. See Irizarry, 150 D.P.R. at 165. Rent Express ignores this contention in its reply, and merely repeats its assertion that Burgos's claim is limited by her deposition testimony. (Reply Mem., p. 8-9; see Docket No. 48-1, p. 80-83). But litigation is not a game of "gotcha," and any supposed admission that might be embedded in

---

[8] As currently codified, that law defines "agency" as:
[A]ny board, body, court of examiners, public corporation, commission, committee, independent office, division, administration, bureau, department, authority, officer, official, person, entity or any instrumentality of the Commonwealth of Puerto Rico or administrative body authorized by law to carry out regulatory or investigative functions or able to issue a decision or with the power to issue licenses, certificates, permits, concessions, accreditations, privileges, franchises and to accuse or adjudicate, except:
(1) The Senate and the House of Representatives of the Legislature.
(2) The Judicial Branch.
(3) The Office of the Governor and all its attached offices excepting those where the application of the provisions of this chapter have been literally expressed.
(4) The Puerto Rico National Guard.
(5) The municipal governments or their entities or corporations.
(6) The Commonwealth Elections Commission.
(7) The Conciliation and Arbitration Bureau of the Department of Labor and Human Resources.
(8) The Advisory Board of the Department of Consumer Affairs on the Classification System of the Television Programs and Hazardous Toys.
(9) The Commission to Resolve Controversies over Payments and Debts between Government Agencies.
3 L.P.R.A. § 2102.

Burgos's response to the defense attorney's misguided attempts at trap questioning lacks any persuasive force. Burgos has provided uncontested evidence that she applied for SINOT, and has shown why that is a protected activity under Law 115. Therefore, Rent Express is not entitled to summary judgment on this element.

> B.    **Adverse Employment Action**

Second, Rent Express argues that there was no adverse employment action because it is uncontested that Burgos was never actually fired, because she later understood that she was never actually fired, and because she was covered again by the Employer Group Plan later on. (See Def. Mem., p. 13). Burgos replies:

> In a normal case of termination, the employer presents its defense as to establish that there was a "just cause" for such termination, while at the present case the employer avoids it with the theory that no termination took place. What is really in **issue** is if there exists an intention of terminating Plaintiff or if it was a negligent act of Defendant, since there is no doubt that an employee that is said to be terminated cannot interpret other thing that his or her condition of employment with employer has ended, as happened to Plaintiff.

(Pl. Mem., p. 15) (formatting and errors as in original). It is no easy task to derive meaning from this pair of musing and meandering sentences, which together—and without discussing any legal authority—constitute Burgos's only support for the adverse-action element of her prima facie case. But under a mildly generous reading, Burgos seems to argue that any act making her *think* she was terminated can violate Law 115.

Ultimately, deciding whether Burgos's stated theory holds water involves an inquiry into whether this conduct violates the statutory prohibition on "discharg[ing], threaten[ing], or discriminat[ing] against an employee regarding the terms, conditions, compensation, location, benefits[,] or privileges of the employment." See 29 L.P.R.A. § 194a(a). But it is not necessary

to plumb these depths;[9] viewed in a light favorable to Burgos's claim, the uncontested facts permit a rational jury to find that Rent Express was threatening her with termination, even if it never followed through. And threats, as just noted, are expressed in the text of Law 115.

For this reason, Rent Express's only argument—that Burgos was not actually terminated—is insufficient to entitle it to judgment as a matter of law. Since Rent Express has failed to show why Burgos cannot prove a prima facie case, and never states any other basis for judgment on the uncontested facts, the motion for summary judgment on the Law 115 claim should be denied.

### III. Article 1802

Burgos's complaint also invokes Article 1802 of the Civil Code, contending that "an intentional or negligent action took place against her on January 28, 2011 through termination, as well as between February 14 and March 10, 2011 . . . ." (Pl. Mem., p. 21). This appears to reflect two distinct Article 1802 claims for damages: one resulting from the "termination letter" on January 27, 2011, and one resulting from her exclusion from the Employer Group Plan between February 14 and March 10, 2011. (See Pl. Mem., p. 21; Def. Mem., p. 15).[10] Rent Express argues that any Article 1802 claim must be dismissed under (1) Puerto Rico's "special laws" doctrine, and (2) ERISA's preemption rule. (Def. Mem., p. 13-17). Since it is only

---

[9] That is not to say the question is unfathomable. For example, analogous principles of federal law might shed light on both what this standard means, and how to decide if it has been met. See Burlington Northern & Santa Fe Ry. Co v. White, 548 U.S. 53, 68 (2006) (Title VII anti-retaliation statute prohibits actions that "might have dissuaded a reasonable worker from making or supporting a charge . . . ."); Vélez v. Janssen Ortho, LLC, 467 F.3d 802, 809 (1st Cir. 2006) (assuming Law 115 and Title VII anti-retaliation claims use same "adverse employment action" standard, though parties did not litigate the question). Since Rent Express has not applied these or any other substantive principles, the court simply lacks the raw materials for an analysis on the merits.

[10] As with her COBRA claim, Burgos's complaint never alleges *how* Rent Express is liable under Article 1802. But, as with her COBRA claim, Rent Express stipulated to suit on an Article 1802 theory. Therefore, as with her COBRA claim, I address the parties' substantive positions. See note , *supra*. Nonetheless, this second claim is perhaps Burgos's least-developed. I have construed it by looking to (1) her summary-judgment discussion of the "24 days" it took Rent Express to restore her to the Employee Plan (Pl. Mem., p. 10), and (2) the introduction to her scheduling memorandum, discussing her emotional ills beginning with her COBRA election on February 14, 2011 and ending with her return to the Employer Group Plan on March 10, 2011 (Docket No. 15, p. 2).

necessary to consider federal preemption to the extent Burgos has a state-law cause of action, I begin with the argument under Puerto Rico law, then turn to ERISA preemption.

### A.　　Special Laws Doctrine

"[T]o the extent that a specific labor law covers the conduct for which a plaintiff seeks damages, he is barred from using that same conduct to also bring a claim under Article 1802." Denis-Rosario v. McConnell Valdes, Civil No. 07-1508 (CCC), 2008 WL 509204, 2008 U.S. Dist. LEXIS 13113 (D.P.R. Feb. 21, 2008) (citing Santini Rivera v. Serv Air, Inc., 137 D.P.R. 1, 1994 P.R.-Eng. 909,527). Law 115 provides double damages for certain forms of employment retaliation against certain protected activities. See 29 L.P.R.A. § 194a. Article 1802 permits recovery for (1) an act or omission caused through fault or negligence, (2) a damage suffered, and (3) a causal nexus between the damage and the other party's wrongful or negligent act. Montalban v. Centro Com. Plaza Carolina, 132 D.P.R. 785, 795-96, 1993 WL 840023; Elba A.B.M. v. Univ. of P.R., 125 D.P.R. 294, 308, 1990 WL 658047.

Here, Rent Express argues that Law 115 supersedes Burgos's Article 1802 claims because her theories are "based on the same conduct." (Def. Mem., p. 15). This is facially correct, but does not go very far. The lynchpin of Law 115 liability is the defendant-employer's retaliatory intent, since it may avoid liability by providing "a non-discriminatory legitimate reason" for its actions. See 29 L.P.R.A. § 194a(c). On the other hand, Article 1802 provides a cause of action for a much broader range of conduct—that occurring by a defendant's "fault or negligence." See 31 L.P.R.A. § 5141. Since Burgos is also alleging damages caused by non-retaliatory conduct, her tort claim is outside the scope of Law 115 and the special law doctrine is wholly inapposite.[11] I thus turn to the applicability of ERISA preemption.

---

[11] Moreover, the special laws doctrine may not apply in this context. Rent Express seems to assume that it effects a total preclusion of tort claims wherever an employer-employee relationship is involved. But the Puerto Rico Supreme Court cautioned against reading the principle too broadly:

B.  **ERISA Preemption**

Rent Express argues that both of Burgos's Article 1802 claims are preempted by ERISA. ERISA expressly preempts three categories of state regulations: "1) those that mandate employee benefit structures or their administration; 2) those that bind plan administrators to a particular choice; and 3) causes of action that provide alternative enforcement mechanisms to ERISA's own enforcement scheme." Zipperer v. Raytheon Co., Inc., 493 F.3d 50, 53 (1st Cir. 2007); see 29 U.S.C. § 1144(a).

Rent Express correctly explains why ERISA preempts both claims. Assuming (as all parties appear to do) that the Employer Group Plan is governed by ERISA, awarding damages for negligently (1) preparing an intended COBRA notice letter or (2) deciding whether Burgos was eligible for the plan would impermissibly mandate plan administration and bypass ERISA's exclusive system of remedies. See Zipperer, 493 F.3d at 54 (preempting claim of negligent record-keeping). Burgos does not substantively address this point, and only retorts that it is "contradictory" for Rent Express to simultaneously argue she has not stated a COBRA claim while ERISA preempts her tort claim. (Pl. Mem., p. 21-22). This paints with too broad a stroke, and misapprehends the principles of federal preemption. The Supremacy Clause, U.S. Const. art. VI, cl. 2, voids any Puerto Rico law that "interferes with or is contrary to federal law." Antilles Cement Corp. v. Fortuño, 670 F.3d 310, 323 (1st Cir. 2012) (quoting Free v. Bland, 369 U.S. 663, 666 (1962)). Therefore, it is permissible for Congress to forbid a state remedy even if it provides no alternative cause of action of its own. ERISA contains such a provision, and Rent

---

Seen in the proper light, labor-social legislation cannot restrict the general rights derived from the Civil Code. The statutory schemes that repeal the general rules of civil liability that govern in Puerto Rico cannot be lightly inferred. It is incumbent upon the Legislature to restrict the available remedies. *When the lawmaker has sought to create immunities and exclusive remedies, he has expressly done so,* as is the case with the Workmen's Accident Compensation Act . . . .

Santini Rivera, 1994 P.R.-Eng. 909,527 at n.5 (citations omitted, emphasis added). Law 115 has no such expression of exclusivity, and thus might not have any "superseding" effect at all. See Serrano Muñoz v. Soc. Esp. de Auxilio Mutuo y Benef. de P.R., 671 F.3d 49, 59 n.8 (1st Cir. 2012). Since Burgos did not advance this point, I do not rest my analysis on it.

Express has demonstrated why it applies here. Absent any other basis for finding Burgos's Article 1802 claims to be outside the reach of ERISA preemption, Rent Express is entitled to summary judgment on them.

## CONCLUSION

For the foregoing reasons, I recommend that the motion for summary judgment be **GRANTED IN PART.** The court should **DISMISS** Burgos's claims for COBRA notice violations and for damages under Article 1802 of the Civil Code. The motion for summary judgment on Burgos's claim under Law 115 should be **DENIED.** Furthermore, Burgos is **ORDERED** to file a certified translation of <u>Irizarry v. Johnson & Johnson Consumer Prods. Co. (P.R.)</u>, 150 D.P.R. 155 (2000) by **February 8, 2013.**

This report and recommendation is filed pursuant to 28 U.S.C. 636(b)(1)(B) and Rule 72(d) of the Local Rules of this Court. Any objections to the same must be specific and must be filed with the Clerk of Court within fourteen (14) days of its receipt. Failure to file timely and specific objections to the report and recommendation is a waiver of the right to appellate review. See <u>Thomas v. Arn</u>, 474 U.S. 140, 155 (1985); <u>Davet v. Maccorone</u>, 973 F.2d 22, 30-31 (1st Cir. 1992); <u>Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co.</u>, 840 F.2d 985 (1st Cir. 1988); <u>Borden v. Sec'y of Health & Human Servs.</u>, 836 F.2d 4, 6 (1st Cir. 1987).

**IT IS SO RECOMMENDED.**

In San Juan, Puerto Rico, this 25th day of January, 2013.

                *S/ Bruce J. McGiverin*
                BRUCE J. McGIVERIN
                United States Magistrate Judge